UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND GORDON SMITH,

                Plaintiff,          Civil Action No.: 13-cv-12700
                                                    Honorable John Corbett O'Meara
        v.                               Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]**

Plaintiff Raymond Smith brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 10] that have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") committed no legal error and his decision is supported by substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Smith's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On December 9, 2010, Smith filed an application for DIB, alleging disability as of March 15, 2003. (Tr. 115-16). The claim was denied initially on March 23, 2011. (Tr. 71-80). Thereafter, Smith filed a timely request for an administrative hearing, which was held on January 4, 2012, before ALJ B. Lloyd Blair. (Tr. 29-49). Smith, represented by attorney Justin Grech, testified, as did vocational expert Michael Rosko. (*Id.*). On February 3, 2012, the ALJ found Smith not disabled. (Tr. 16-28). On April 24, 2013, the Appeals Council denied review. (Tr. 1-6). Smith filed for judicial review of the final decision on June 19, 2013. [1].

### B.     Background

#### *1.     Smith's Reports and Testimony*

Smith was sixty-six years old at the time of the administrative hearing. (Tr. 34). He had previously worked as a welding machine repairman and a lead maintenance worker. (Tr. 34-35). He was currently working part-time as an airport shuttle driver. (Tr. 150-51). In that capacity, he made contradictory reports as to the amount of weight he lifted for that job – at one point claiming he lifted no more than ten pounds, but later testifying he lifted fifteen pounds, and at another point that he lifted twenty pounds. (Tr. 43; 48; 138). He also testified that the heaviest weight he could lift is 15-20 pounds. (Tr. 40)

Smith claimed that the conditions preventing him from working are bladder removal, hearing loss and neck pain. (Tr. 150). He testified that he underwent surgery for bladder cancer in 2003, and that his bladder was removed and a stoma was placed in his abdomen, connected to an ostomy bag that he empties four times a day. (Tr. 36; 42). He reported that the stoma "makes it hard to lift anything." (Tr. 175). Smith testified that he also suffers from neck spasms that

2

occur "every four or five months," and that get better "after a couple of days," after he takes medication, which he reported was Tylenol #4. (Tr. 36; 152; 154). He also testified to having hearing trouble and wearing a hearing aid. (Tr. 36).

Smith reported that his day consists of waking, showering, watching the news, and doing "some things around the house." (Tr. 176). Smith testified that he cooks, does laundry and performs yard work including mowing and edging, although he reported and testified to using a riding mower and power edger. (Tr. 39; 177-78). He also walks his dog "every day for about 5 blocks," draws in his basement, and "might go to the show, take my wife out to dinner." (Tr. 39-40). He testified that he does climb stairs daily and can bend over, but that squatting bothers him. (Tr. 40). He reported that his conditions interfere with lifting and kneeling. (Tr. 180). He can stand 30-40 minutes at a time and sit for an hour-and-a-half before needing to change position. (Tr. 41). He can drive and go out alone and attends church weekly. (Tr. 178-79). He reported that he can no longer golf due to his conditions. (Tr. 179).

    3.    *Medical Evidence*

        a.    *Bladder Cancer*

In 2003, Smith was diagnosed with a squamous cell carcinoma is his bladder and underwent surgery that resulted in the removal of his bladder and the implantation of a stoma connected to an ostomy bag. (Tr. 217; 241; 259; 267; 277-82; 292). Smith also underwent four rounds of chemotherapy, finishing his last course in October 2003. (Tr. 228; 231). He tolerated well both the surgery and subsequent chemotherapy, only once noting more than a few mild symptoms from the adjuvant treatment, which resolved after his completion of it. (Tr. 228-53; 342). Smith was monitored by his doctors for the required five year period, at which point he was discharged to return as needed. (Tr. 335; 366-69). At that last appointment, it was

concluded that Smith had suffered no recurrence, no symptoms, no pain, no weight loss, and no tender points. (*Id.*). A physical examination was unremarkable. (*Id.*). During the five years of monitoring, Smith repeatedly reported that he was "doing well," "feeling well," being physically active, and, in at least one report "doing everything he wants to do." (Tr. 220-226; 296-300; 405-410). He similarly had "no new complaints" during this period. (Tr. 220-226; 296-300; 405-410).[1] Objective medical tests conducted during this period, including CT scans of Smith's abdomen and pelvis, as well as chest x-rays, were unremarkable as they related to his condition. (Tr. 216; 254-57; 261; 266; 373; 375-76; 390).[2]

### b. Neck and Shoulder Spasms

In August 2004, Smith reported to his treating physician, Dr. Mohammad Razzaque, that he was experiencing left shoulder pain. (Tr. 215). Dr. Razzaque noted that the condition resulted in no limitations of movement and recommended exercise. (*Id.*). At Smith's next documented appointment, on November 23, 2004, he had no complaints. (*Id.*). Smith did not complain of shoulder pain again until August 2007, when he reported such pain, along with left side pain, when lifting. (Tr. 379). He was diagnosed with chest pain and muscle spasms and prescribed Naprosyn, and later Tylenol #4. (*Id.*). Follow-up appointments in September of that year characterized the pain as "chest pain" and Smith was prescribed Celebrex. (*Id.*).[3]

---

[1] The only exception to this was a short period in which Smith was complaining of a minor unrelated concern. (*See* Tr. 300).

[2] CT scans did reveal small cysts on Smith's liver, kidney and his rectum, but none were considered malignant or related to his prior bladder cancer. (Tr. 254; 373; 382-83). Smith underwent surgery for rectal polyps in August 2007. (Tr. 382-83). There were no allegations or evidence that this condition was disabling, and Smith does not argue that it should have been considered by the ALJ.

[3] Full body bone scans were also conducted before and after Smith's chemotherapy. The scan conducted before treatment was unremarkable, and the one conducted after, specifically in 2005,

In January 2008, Smith called Dr. Razzaque's office complaining of shoulder pain and seeking refills of pain medication. (*Id.*). When he was informed he would have to make an appointment to be seen, he did not follow up to make that appointment. (*Id.*). Smith did not again complain of shoulder pain until September 2008, when he reported neck spasms. (Tr. 380). An exam revealed a stiff cervical spine, and limited motion on the right. (*Id.*). Smith was diagnosed with cervical radiculopathy and, in November of that year, prescribed Celebrex and Tylenol #4. (*Id.*).

Smith did not return again for this condition until June 2010. He was diagnosed with "acute cervical radiculopathy" and prescribed Flexeril and Tylenol #4. (*Id.*). In August of that year, he reported that the Tylenol made him tired. (*Id.*).

### c.  *Hearing Loss*

On January 14, 2004, Smith underwent a baseline hearing survey and test through his employer. (Tr. 206-207). Smith reported at the time that his hearing was "average," and the test reported no change in his hearing. (*Id.*). In 2010, Smith was evaluated for hearing loss. (Tr. 446). It was determined that his hearing trouble was both the result of a buildup of wax, as well as sensorineural in nature, as a result of exposure to loud noise at his place of employment for forty years, and the fact that he only began wearing earplugs the last twelve of those years. (*Id.*). At a follow-up appointment, Smith reported purchasing hearing aids and that "he is hearing well and is very happy." (*Id.*).

### d.  *Other Conditions*

Smith argues in his motion that the ALJ failed to consider other conditions in his decision, most notably alleged heart conditions. The Court thus recounts the evidence as it

---

showed slight arthritic changes and degenerative disease, but was otherwise negative. (Tr. 263-64).

5

relates to Smith's heart. In January 2005, Smith complained of chest pain, and an x-ray was ordered, which was unremarkable. (Tr. 215-16). Chest x-rays taken in 2004, 2006 and 2007 were also normal. (Tr. 256; 266; 376). On September 11, 2007, Smith underwent an ECG, which found mild to moderate mitral regurgitation, and an ejection fraction of 55-60%. (Tr. 427; 429). On September 21, 2007, Smith underwent a cardiac catheterization based on a preoperative diagnosis of atherosclerotic heart disease and mild coronary artery disease, which was due to his complaints of chest pain and a positive stress test. (Tr. 425). During the procedure, no mitral regurgitation was found. (*Id.*). The final assessment was that Smith "does not have any critical stenosis to account for [his] chest pain as well as abnormal stress test. We will treat him medically." (Tr. 426). In September 2011, Smith underwent a duplex carotid imaging, the results of which "suggest[ed] underlying hypertension" and which also showed a "[m]oderate amount of bilateral plaque involving both common carotid arteries and internal carotid arteries and bulb," but revealed "no significant stenosis of either internal carotid artery." (Tr. 441). However, it should be noted that this last record is dated after Smith's date last insured, which was March 30, 2011.

### e. Consultative Examination

On March 11, 2011, Smith underwent a consultative examination for the State of Michigan. (Tr. 416-22). He reported taking Tylenol #4 and Flexeril "as necessary," denied having heart trouble, and took out his hearing aids for the examination. (Tr. 416). Upon exam, some stiffness and lack of movement was noted in Smith's cervical spine. (Tr. 417). He was able to squat, get on and off the table without difficulty, and pick up a coin. (*Id.*). He had good grip strength and full range of motion in all areas except his neck. (*Id.*; Tr. 420-21). The consultative examiner diagnosed him with "possible osteoarthritis in his neck," decreased

6

hearing compensated for by hearing aids, and status post bladder cancer with a stoma in his right lower quadrant. (*Id.*). He found that Smith could engage in all physical activities. (Tr. 418-19).

### 4. Vocational Expert's Testimony

At the hearing, the VE classified Smith's work as a shuttle driver as semi-skilled and medium per the Dictionary of Occupational Titles ("DOT"), but light as performed by him. (Tr. 45). He classified Smith's work as a welding machine repairman as skilled and medium per the DOT, but heavy as performed, and his work as a lead maintenance worker as skilled and light. (Tr. 45-46). The ALJ then asked the VE to imagine a hypothetical claimant who could engage in light work, never use ladders, ropes or scaffolds, only occasionally use ramps or stairs, and only occasionally kneel, crouch, crawl, bend, twist or turn at the waist or neck. (Tr. 46). The ALJ asked whether such an individual could perform any of Smith's past work. The VE testified that such an individual could perform both the shuttle driver position as well as the lead maintenance worker. (Tr. 46). The VE testified that his testimony was consistent with the DOT.

### C. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

>Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

      **D.**    **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ concluded that Smith was not disabled.  At Step One, he determined that Smith's work as a shuttle driver had not constituted substantial gainful activity, and thus he had not engaged in substantial gainful activity from his alleged onset date through his date last insured, which was March 30, 2011.  (Tr. 21).  At Step Two, the ALJ found the following severe impairment: "status post bladder cancer with stoma." (*Id.*).  He concluded that Smith's other alleged conditions, his neck spasms and hearing loss, did not have more than a minimal effect on his ability to perform basic work activities because the spasms only occurred once every 4-5 months and the hearing loss was compensated for by

hearing aids. (Tr. 21-22). At Step Three, the ALJ concluded that Smith's conditions, either alone or in combination, did not meet or medically equal a listed impairment. (Tr. 22). The ALJ next assessed Smith's residual functional capacity, finding him capable of "light work . . . except that he can never use ladders, scaffolds, or ropes; can occasionally use ramps or stairs, stoop, kneel crouch, or crawl; and can occasionally bend, twist, or turn at the waist or neck." (*Id.*). The ALJ then concluded, at Step Four, and based on VE testimony, that Smith could still perform his past relevant work as a lead maintenance worker, and thus he was not disabled. (Tr. 23-24).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Smith argues that the ALJ's decision finding him not disabled is both not supported by substantial evidence, and the result of legal error. However, Smith's allegation of legal error is premised on the notion that the ALJ failed to consider the entire record. Thus, for purposes of this analysis, the Court finds it can address both arguments together.

Smith first argues that the ALJ's decision is not supported by substantial evidence. He notes first that the ALJ failed to find, at Step Two, that his neck spasms, hearing loss, and heart

10

problems constituted severe impairments. The Court disagrees. First, as the ALJ correctly noted, Smith himself testified that his neck problems only occurred every four to five months and lasted a couple of days before resolving. (Tr. 21; 36). He did not testify to any specific limitations of activities that would occur during this period of time. Hence, the ALJ could reasonably have concluded that this condition is but a "slight abnormality[,] which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work," and is therefore non-severe. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Smith reported to his doctors that his hearing loss was fully compensated for by his hearing aids. (Tr. 446). With regard to his heart, the Court notes that Smith himself never alleged a disabling heart condition in any of his subjective reports, and specifically denied having any heart trouble during his consultative examination, which took place four years after his 2007 heart catheterization. (Tr. 416; 426). Further, the only subsequent evidence relating to a heart condition was a treatment record dated after Smith's date last insured. (Tr. 441). Accordingly, the ALJ's conclusion that these impairments were non-severe is supported by substantial evidence.

Regardless, the point is moot since, despite finding these conditions non-severe, the ALJ considered them when formulating his RFC, as he specifically stated in his decision. (Tr. 22); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (the Secretary's failure to find that claimant's cervical condition constituted a severe impairment did not constitute reversible error where he found the existence of other severe impairments and proceeded to Step Three); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. 2007) ("[W]hen an ALJ considers all of the claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find

additional severe impairments at step two does not constitute reversible error.") (internal quotations omitted).

In addition, the ALJ specifically accounted for Smith's neck spasms in his RFC when he limited Smith's ability to bend, twist, or turn at his neck. (Tr. 22). That the ALJ did not impose specific limitations based on either Smith's hearing loss or his heart condition does not change this result, as there is no need to impose limitations based on a condition that has been fully rectified by treatment, or based on one that was not even alleged by the claimant to be severe in the first instance. *See e.g. Brumitte v. Astrue*, 2009 U.S. Dist. LEXIS 16907, *11 (E.D. Tenn. Mar. 5, 2009) (20/50 vision not a severe condition where it can be cured); *Hughes v. Astrue*, 2011 U.S. Dist. LEXIS 98940, *31 (N.D. Ohio Aug. 5, 2011) *adopted by* 2011 U.S. Dist. LEXIS 98978 (N.D. Ohio Aug. 31, 2011) (ALJ did not err in finding condition non-severe where claimant did not allege condition affected ability to work). Further, Smith fails to point to any evidence in the record that would support the need for additional limitations.[4] Thus, even if the ALJ had erred in failing to find these conditions severe at Step Two, this error was rendered harmless by the ALJ's subsequent analysis.

Smith further argues that the ALJ failed to consider the entire case record when concluding that Smith could perform light work. Smith specifically points to his testimony about his ability to sit, stand and lift certain weights. As outlined above, Smith testified at the hearing

---

[4] Instead, Smith's brief mainly focuses on the diagnoses of these conditions. However, a diagnosis of a disease alone is not sufficient to render a claimant disabled. *See Dukes v. Comm'r of Soc. Sec.*, No. 10-436, 2011 U.S. Dist. LEXIS 105526 at *16, 2011 WL 4374557 (W.D. Mich. Sept. 19. 2011) *quoting McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 U.S. App. LEXIS 11791, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). That disease must interfere with the claimant's ability to work so severely that the claimant is unable to perform any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A).

that he could stand four 30-40 minutes at a time and sit for an hour-and-a-half before needing to change position. (Tr. 41). In addition, Smith testified to being able to lift a variety of weights but that the heaviest weight he lifted in his job as a shuttle driver or that could lift was 20 pounds. (Tr. 40; 43; 48; 138). The ALJ appropriately noted that Smith's ability to engage in these activities was "inconsistent with a finding of complete disability." (Tr. 23).

Smith argues that the ALJ erred in only analyzing whether the record supported a finding of complete disability, as, given Smith's age, a finding that he could only engage in sedentary work would render him disabled under the Act. 20 CFR Pt. 404 Appx. 2 § 201.06. While this may be true, the ALJ's statement that Smith's activity level was inconsistent with complete disability is irrelevant where substantial evidence supports his ultimate finding that Smith was capable of more than sedentary work, namely a limited range of light work. First, it should be noted that the burden is on the claimant to prove he is disabled through Step Four. *Martin v. Comm'r of Soc. Sec.*, No. 13-10420, 2014 U.S. Dist. LEXIS 28248, *40 (E.D. Mich. Feb. 17, 2014) *citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Second, in addition to noting the above functional abilities, the ALJ further noted that his conclusions about Smith's abilities were based, in part, on Smith's "own testimony regarding his exertional aptitudes," which included his testimony about his activities of daily living (cooking, yard maintenance, laundry) (Tr. 39-10, 176-78), and was also "supported by the longitudinal evidence" which included repeated references in the record to Smith "doing well," being physically active, and even "doing everything he wants to do." (Tr. 220-26, 296-300, 405-410). In addition, when asked why he could not return to his former job as a lead maintenance worker, Smith testified only that it was because the characteristics of his particular job had changed since he left that employment, now requiring an ability "to lift certain things." (Tr. 48; *cf.* Tr. 45

13

(testifying that as performed that job required no lifting)).  Therefore, the Court finds that the ALJ did not err in finding that Smith was capable of engaging in a limited range of light work, or in relying on VE testimony at Step Four to conclude that Smith could return to his past relevant work, both as performed by him and as it is generally performed.  (Tr. 23-24).[5]

In sum, the Court finds that Smith failed to identify any error in the ALJ's decision, which, based on a complete review of the record, is supported by substantial evidence.  Therefore, the ALJ's decision should be affirmed.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Smith's Motion for Summary Judgment **[9]** be **DENIED**, the Commissioner's Motion **[10]** be **GRANTED** and this case be **AFFIRMED**.

Dated: March 18, 2014                                   s/David R. Grand
Ann Arbor, Michigan                                      DAVID R. GRAND
                                                         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific

---

[5] The fact that Smith testified that the requirements of his former position changed with regard to the amount of lifting has no bearing on the question of whether he could return to his past relevant work, either how that work is classified by the DOT or as it was performed by him, since, at the time he performed his job it did not require the additional lifting.  Furthermore, even if it were determined that Smith could not return to his past work as it was performed by him, the ALJ found he could return to it as it was generally performed, and thus he would still be found not disabled at Step Four.  *See* 20 C.F.R. § 404.1560(b)(2) ("past relevant work" defined as work performed in last 15 years that was substantial gainful activity, "taking into consideration not only physical and mental demands of claimant's own work but also as it is generally performed in the national economy.").

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2014.

                                                s/Felicia M. Moses
                                                FELICIA M. MOSES
                                                Case Manager